UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER LAW,

        Plaintiff,

Case No. 1:09-cv-503

Hon. Robert J. Jonker

vs.

ANTHONY STEWART, *et al.*,

        Defendants.

_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. This matter is now before the court on motions for summary judgment filed by defendant Dale Bonn (docket no. 58) and defendants Donald Smith, Matt McCauley, Carmen Palmer, Patricia Caruso, Anthony Stewart, Timothy Kipp, Robert Sutherland, Scott Yokom and Dale Bonn (docket no. 71).

    **I.**    **Background**

Plaintiff has filed an amended complaint against Michigan Department of Corrections (MDOC) Director Patricia Caruso and the following officers and employees of the Michigan Reformatory in Ionia, Michigan (RMI): Warden Carmen Palmer; Deputy Warden Timothy Kipp; Assistant Deputy Warden Anthony Stewart; Assistant Deputy Warden Matt McCauley; Resident Unit Manager (RUM) Robert Sutherland; Assistant Resident Unit Supervisor (ARUS) Dale Bonn; ARUS Scott Yokom; and Officer Smith (identified in later filings as Resident Unit Officer (RUO) Donald Smith).

Plaintiff set forth the following allegations in his amended complaint. On November 8, 2007, while plaintiff was incarcerated at the Macomb Correctional Facility (MRF), he received

a special accommodation notice (SAN). The SAN contained three accommodations for housing: a ground floor room; a bottom bunk; and "access to elevat[or] or lift from ground floor room." MDOC SAN (Nov. 8, 2007) (docket no. 81). In addition, the SAN contained two accommodations for medical equipment: a knee brace (24 hour use); and a wooden cane. *Id.* Finally, the SAN contained an additional accommodation for an attendant, whose duties were "to assist with meal access and other movement inside the institution," but not to feed, lift or "perform elements of personal hygiene" on the patient. *Id.*

On November 16th, plaintiff was transferred from MRF to RMI. Amended Compl. at p. 6.[1] Upon his arrival at RMI, plaintiff was assigned a room ("J-2") which did not comply with the previously-issued SAN and notified staff of this violation. *Id.* Later that day, at 11:41 p.m., RMI issued plaintiff an updated SAN which contained the same six accommodations as the November 8th SAN. *See* MDOC SAN (Nov. 16, 2007) (docket no. 81). Plaintiff complained about his room until November 18th, at which time staff moved him to a different room ("I-1"). Amend. Compl. at p. 6.

According to plaintiff, the new room assignment did not address his needs because he "was still required to climb stairs." *Id.* From November 18th to December 26th, plaintiff allegedly told defendants Stewart, Kipp, McCauley, Sutherland, Bonn, Yokom and Smith that his room assignment was not in compliance with the SAN. *Id.* In response to plaintiff's complaints, defendants told plaintiff that he was "getting transferred." *Id.*

---

[1] Plaintiff arrived shortly after RMI opened on November 7th. Sutherland Aff. at ¶ 3 (docket no. 73-2).

It is undisputed that staff at RMI issued four additional SANs in November and December. A November 20th SAN reiterated the six accommodations as set forth in the November 16th SAN. *See* MDOC SAN (Nov. 20, 2007) (docket no. 81). A November 28th SAN added a seventh accommodation, "At risk for heat-related illness." *See* MDOC SAN (Nov. 28, 2007) (docket no. 81). A December 6th SAN added an eighth accommodation, "No stairs due to phy [sic]." *See* MDOC SAN (Dec. 6, 2007) (docket no. 81). Finally, a December 12th SAN added "Special Garment (elastic waist pants, velc)." *See* MDOC SAN (Dec. 12, 2007) (docket no. 81).

Plaintiff alleged that on December 21st, he had a mandatory call out to attend law library. Amend. Comp. at p. 6.[2] Plaintiff advised defendant Smith that he could not go to the call-out because of his disabilities and accommodations, which included "a restriction from using stairs." *Id.* Smith told plaintiff that he would receive a major misconduct if he did not go to the call-out. *Id.* On his way to the call-out, plaintiff fell down the stairs and was taken by ambulance to a hospital in Ionia. *Id.* He was "badly bruised" and experienced muscle spasms. *Id.* at p. 7. It is undisputed that plaintiff was transferred to the Carson City Correctional Facility (DRF) on December 26, 2007. *See* Robert Sutherland Aff. at ¶ 8 (docket no. 73-2).

In the present action alleging that defendants violated his constitutional right of access to the courts, his Eighth Amendment rights, the Americans with Disabilities Act and the Rehabilitation Act. Amend. Compl. at p. 7. Plaintiff also alleged that defendants were grossly negligent. *Id.* The gist of plaintiff's complaint is that RMI could not accommodate his "medical and legal needs." *Id.* at p. 5. Specifically, he had trouble climbing stairs to go the chow hall or

---

[2] There is no evidence to support plaintiff's allegation that he had a mandatory call out to the law library. Rather, plaintiff's December 21st call out was to the general library. *See* discussion, *infra*.

3

using the showers due to the weak conditions of his legs, and was not provided with adequate access to the courts, because he could only submit written requests for information from the prison law library and was unable to receive "instant feedback" from the law clerks in the law library. *Id.* at pp. 5-6. Plaintiff seeks more than $75,000.00 in monetary damages from each defendant and asks for injunctive relief to transfer him to a facility that can deal with his special accommodations. Defendants have moved for summary judgment.

## II. Legal Standard

Defendants have moved for summary judgment on various grounds. Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). However, the court is not bound to blindly adopt a non-moving party's version of the facts. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury

4

could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. Discussion

#### A. Section 1983 claims

Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, which confers a private federal right of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Burnett v. Grattan*, 468 U.S. 42, 45 n. 2 (1984); *Stack v. Killian*, 96 F.3d 159, 161 (6th Cir.1996). To state a § 1983 claim, a plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution and laws of the United States, and (2) that the defendant deprived him of this federal right under color of law. *Jones v. Duncan*, 840 F.2d 359, 360-61 (6th Cir. 1988); 42 U.S.C. § 1983.

##### 1. Access to the courts

Plaintiff's complaint alleged that he did not receive equal access to the courts because he "can only submit written requests every 24-hours to the Law Library for a limited number of Law Books" and "is unable to ask legal question of the law clerks in the law library, to receive instant feedback from them like all the rest of the inmate population that can climb the stairs to the Law Library." Amend. Compl. at p. 5.

"[T]he right of access to the courts is a fundamental right protected by the Constitution," *Graham v. National Collegiate Athletic Association*, 804 F.2d 953, 959 (6th Cir.1986), which arises from the First and Fourteenth Amendments, *Lewis v. Casey*, 518 U.S. 343, 354 (1996). The Constitution also ensures that access to the courts will be "adequate, effective, and meaningful." *Bounds v. Smith*, 430 U.S. 817, 822 (1977). To state a claim for interference with

access to the courts, prisoners must show actual injury connected to the pursuit of non-frivolous legal claims challenging their convictions or conditions of confinement. *Lewis*, 518 U.S. at 355-56; *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578.

Plaintiff has failed to state a cause of action for interference with his access to the courts. Specifically, plaintiff has not alleged that denial of access to the Law Library caused actual injury to his pursuit of non-frivolous legal claims challenging his conviction or conditions of confinement. Accordingly, defendants are entitled to summary judgment on this claim.

### 2. Eighth Amendment Claim

It is well established that an inmate has a cause of action under § 1983 against prison officials for "deliberate indifference" to his serious medical needs, since the same constitutes cruel and unusual punishment proscribed by the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97 (1976). A viable Eighth Amendment claim consists of an objective and a subjective component. *Farmer*, 511 U.S. at 834. A court considering a prisoner's Eighth Amendment claim must ask both if the alleged wrongdoing was objectively harmful enough to establish a constitutional violation and if the officials acted with a sufficiently culpable state of mind. *Hudson v. McMillian*, 503 U.S. 1, 8 (1992).

The objective component requires the infliction of serious pain or failure to treat a serious medical condition. *Id.* at 8-9. With respect to the infliction of serious pain, courts recognize that "[b]ecause routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities

are sufficiently grave to form the basis of an Eighth Amendment violation." *Id.* at 8 (internal citations and quotation marks omitted). Similarly, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Id.* at 9.

The subjective component requires that the defendant act with deliberate indifference to an inmate's health or safety. *See Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). To establish the subjective component, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

### a. MDOC Director Caruso and Warden Palmer

Plaintiff has not alleged that either Director Caruso or Warden Palmer participated in either his housing assignment or the December 21st incident which resulted in his alleged injuries. Rather, plaintiff's apparent claim is that these two state officials were responsible for the acts of their subordinates and that Warden Palmer responded to a grievance appeal. It is well settled that a § 1983 action cannot be based on a theory of respondeat superior. *See Monell v. New York City Dep't. of Social Services*, 436 U.S. 658, 691 (1978); *Taylor v. Michigan Dep't. of Corrections*, 69 F.3d 76, 80-81 (6th Cir. 1995). A supervisor's liability under § 1983 cannot attach where the allegation of liability is based upon a mere failure to act. *Salehpour v. University of Tennessee*, 159 F.3d 199, 206 (6th Cir. 1998). In order to hold a supervisor liable under § 1983, "[t]here must be

7

a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it." *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Warden Palmer's only connection with plaintiff was her review of a Step I grievance RMI 08-02-256-03D and response to a Step II appeal of that grievance. *See* Palmer Aff. at ¶ 8 (docket no. 72-3). A prison official whose only role involved the denial of an administrative grievance cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Correctional Medical Services*, 73 Fed. Appx. 839, 841 (6th Cir. 2003). *See Martin v. Harvey*, 14 Fed. Appx. 307, 309 (6th Cir. 2001) (observing that the denial of an appeal of a grievance complaining of inadequate medical care is not the same as the actual denial of a request to receive medical care). Accordingly, MDOC Director Caruso and Warden Palmer should be granted summary judgment.

    **b.**    **ADW Stewart and ADW Macauley**

ADW Stewart and ADW Macauley have submitted affidavits stating that they are not involved in prisoner housing unit placements. Anthony Stewart Aff. at ¶ 4 (docket no. 72-4); Matthew Macauley Aff. at ¶ 6 (docket no. 72-5). In his affidavit, ADW Macauley further stated that prisoner housing assignments "are typically handled by Assistant Resident Unit Supervisors." Macauley Aff. at ¶ 6. Plaintiff has not submitted a counter-affidavit or other evidence to rebut these statements.[3] There is no allegation, let alone evidence, that either ADW Stewart or ADW Macauley

---

[3] The court notes that plaintiff filed a "Sworn Affidavit" in response to a previous motion for summary judgment. *See* Sworn Affidavit (docket no. 47-2). In this document, plaintiff states that, "[o]n many occasions from November 16, 2007 to December 26, 2007 I spoke to Anthony Stewart, Timothy Kipp, Matthew Macauley, Alan Bonn, Scott Yokom, Donald Smith, Robert Sutherland and Carmen Palmer about my medical accommodations." *Id.* at ¶ 5. However, this document was not filed in response to the present motions for summary judgment. More importantly, the document is not an affidavit. While the document was

8

were involved with plaintiff's injuries suffered on December 21st, and they are entitled to summary judgment.

### c. ADW Timothy Kipp

There is no evidence that ADW Kipp was involved in plaintiff's housing placement. ADW Kipp has submitted an affidavit stating that he never spoke with plaintiff concerning his special accommodations between November 18 and December 26, 2007. Kipp Aff. at ¶ 4 (docket no. 72-6). Plaintiff has not submitted a counter-affidavit or other evidence to rebut these statements. While ADW Kipp reviewed plaintiff's Step II grievance appeal, *id.* at ¶ 5, this action did not create liability under § 1983. *See Alder*, 73 Fed. Appx. at 841; *Martin*, 14 Fed. Appx. at 309; *Shehee*, 199 F.3d at 300. Finally, there is no allegation, let alone evidence, that ADW Kipp was involved with plaintiff's alleged injuries suffered on December 21st. ADW Kipp is also entitled to summary judgment as to all claims.

### d. ARUS Bonn, RUM Sutherland and ARUS Yokom

ARUS Bonn set forth the following facts in his affidavit. Bonn was not involved in assigning prisoners to cells on the day plaintiff was transferred to RMI on a Friday, November 16th. Bonn Aff. at ¶¶ 3-4 (docket no. 59-3). However, Bonn was working in the unit where plaintiff was assigned on that date. *Id.* at ¶ 5. Plaintiff was moved from J-2 to I-1 on a Sunday, November 18th, when RMI staff were made aware of the November 16th SAN requiring a ground floor room and

---

signed by a notary, it did not contain a notary jurat vouching for the truthfulness of the signed record. *See* M.C.L. § 55.265(a). "The absence of a jurat or other evidence of verification requires a finding that the document fails to constitute an affidavit." *Knobloch v. Langholz*, No. 231070, 2002 WL 1360388 at *2 (Mich. App. June 21, 2002) (unpublished). "A purported affidavit, on which perjury could not be assigned if it was wilfully false, would not, in law, be an affidavit at all." *Kelley v. City of Flint*, 251 Mich. 691, 695-96; 232 N.W. 407 (1930). Furthermore, even if the court accepted the affidavit, plaintiff's vague statement regarding unspecified conversations would not create a genuine issue of material fact to preclude summary judgment.

bottom bunk. *Id.* at ¶ 6. Bonn described I-1 as a ground floor housing unit with one bed (bottom bunk) per cell; an entrance with a ramp; and access to an elevator. *Id.* at ¶ 7. No other housing accommodations were listed on the November 16th SAN. *Id.* at ¶ 7. Bonn did not have any contact with plaintiff after he was moved to I-1 on November 18th. *Id.* at ¶ 8.

RUM Sutherland spoke with plaintiff between November 18, 2007 and December 26, 2007 regarding his special accommodations and placement at RMI. Sutherland Aff. at ¶ 4. In response to this conversation, plaintiff was moved to I-1. *Id.* at ¶ 5. Sutherland stated that I-1 met the criteria listed in plaintiff's November 16th SAN, which required ground floor room, bottom bunk, access to elevator or lift from ground floor room, knee brace, wood cane, and attendant to assist with meal access and other movement inside the facility. *Id.* at ¶ 6 (docket no. 73-2). Sutherland noted that the November 16th SAN did not include an accommodation for "no stairs." *Id.*

ARUS Scott Yokom also spoke with plaintiff about his placement at RMI. Yokom Aff. at ¶ 5 (docket no. 73-1). During the week of November 28th, plaintiff advised Yokom "that he could not be housed at RMI because he had a 'no stairs' health care accommodation." *Id.* at ¶ 7. Yokom contacted the RMI Health Care and was advised that plaintiff did not have a "no stairs" health care special accommodation and that his health care needs could be met at RMI. *Id.* at ¶ 8. When Yokom became aware of the "no stairs" SAN issued on December 6th, he started searching for a facility that could accommodate plaintiff's health care and security needs. *Id.* at ¶¶ 9-10.

Plaintiff signed up for 12 call outs to the general library on December 12, 13, 14, 15, 16, 17, 18, 19, 20, 21, 22 and 23, 2007. *See* Level IV General Library Request (docket no. 73-1). Plaintiff took this action despite the fact that going to the general library and law library requires

climbing stairs. *See* Yokom Aff. at ¶ 11. Plaintiff attended his general library call outs on December 15th, 16th, 17th, 20th and 21st. Yokom Aff. at ¶ 13. Plaintiff did not attend his general library call outs on the following dates: December 12th (due to a conflicting superior callout); December 13th and 14th (because those dates were full); and December 18th and 19th (due to restrictions).[4] Yokom Aff. at ¶ 13. Plaintiff has not filed a counter-affidavit or other evidence to dispute the facts as set forth in the affidavits of ARUS Bonn, RUM Sutherland and ARUS Yokom.

Viewing the facts in the light most favorable to plaintiff, the court concludes that no genuine issue of material fact exists with respect to plaintiff's § 1983 claims against ARUS Bonn, RUM Sutherland or ARUS Yokom. There is no evidence that any of these defendants intiially assigned plaintiff to J-2. While these three defendants had a role in placing plaintiff in I-1, there is no evidence that this placement violated plaintiff's Eighth Amendment rights. On the contrary, plaintiff's placement in I-1 was consistent with the SAN in effect in that time. In addition, there is no evidence that these defendants violated plaintiff's Eighth Amendment rights after the issuance of the "no stairs" restriction on December 6th. On the contrary, when ARUS Yokom became aware of this new restriction, he started searching for a facility that could accommodate plaintiff, who was transferred to a different correctional facility within three weeks. Furthermore, throughout plaintiff's entire incarceration at RMI, he had a SAN for an attendant to assist him on the stairs. Accordingly, ARUS Bonn, RUM Sutherland and ARUS Yokom are entitled to summary judgment on these claims.

---

[4] The December 18th call out includes the notation, "[n]o steps, bottom floor restricted per Officer Muirhead), while the December 19th call out contains the following notation, "has med detail (no stairs)." Call Out Log (Dec. 18, 2007) (docket no. 73-1).

### e. RUO Smith

RUO Smith had limited involvement with plaintiff. On December 21, 2007, plaintiff advised Smith that he did not want to go to his schedule library call out. Smith Aff. at ¶¶ 3-4 (docket no. 73-2). In response, Smith told plaintiff that "if he did not go to his mandatory detailed call out he could get a major misconduct (e.g., for Out of Place)." *Id.* Plaintiff did not state at any time that he did not want to go on the call out because of a "no stairs" restriction and Smith "never told [plaintiff] that he had to climb the stairs." *Id.* It was during this call out that Smith allegedly fell climbing the stairs. Plaintiff has not filed a counter-affidavit or other evidence to dispute the facts as set forth in Smith's affidavit.

There is no evidence that RUO Smith had any role in assigning plaintiff to a cell. Rather, Smith was involved only with the December 21st incident. Viewing the evidence in the light most favorable to plaintiff, the court concludes that RUO Smith is entitled to summary judgment. Plaintiff signed up for general library call out after he received the "no stairs" restriction. Plaintiff successfully negotiated the stairs on four earlier occasions, including the day before he fell. Plaintiff did not advise RUO Smith of his restriction as a reason to avoid the call out. Furthermore, there is no evidence that plaintiff requested an attendant for the stairs as authorized by the SAN. Plaintiff's claim is without merit and RUO Smith is entitled to summary judgment.

### B. ADA and Rehabilitation Act claims

#### 1. Individual capacity claims

Plaintiff has asserted that defendants, public employees, violated the ADA, 42 U.S.C. § 12101 *et seq.* and the Rehabilitation Act, 29 U.S.C. § 794 *et seq.* Plaintiff cannot maintain claims under either the ADA or the Rehabilitation Act against defendants in their individual capacities. *See*

*Lee v. Michigan Parole Board*, 104 Fed. Appx. 490, 493 (6th Cir. 2004) (neither the ADA nor the Rehabilitation Act impose liability upon individuals, citing 29 U.S.C. § 794(b) and 42 U.S.C. § 12131(1)). The proper defendant under the ADA is the public entity, or an official acting in his official capacity. *Everson v. Leis*, 556 F.3d 484, 501 n. 7 (6th Cir. 2009). *See Will v. Michigan Department of State Police*, 491 U.S. 58, 71 (1989) ("[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself.") (citations omitted). Accordingly, defendants should be granted summary judgment on plaintiff's claims brought against defendants in their individual capacities.

### 2. Official capacity claims

#### a. Rehabilitation Act

The Rehabilitation Act of 1973 prohibits discrimination against disabled individuals by recipients of federal funding. *Barnes v. Gorman*, 536 U.S. 181, 185 (2002). The pertinent portion of the Act reads as follows: "No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). A cause of action under Section 504 of the Rehabilitation Act consists of four elements:

> (1) The plaintiff is a "handicapped [disabled] person" under the Act; (2) The plaintiff is "otherwise qualified" for participation in the program; (3) The plaintiff is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely by reason of his handicap [disability]; and (4) The relevant program or activity is receiving Federal financial assistance.

13

*Sandison v. Michigan High Schol Athletic Association, Inc.*, 64 F.3d 1026, 1030-31 (6th Cir.1995) (footnote omitted).

Assuming that plaintiff met requirements 1, 2 and 4 (i.e., he was a handicapped person, who was otherwise qualified for participation in the prison's program to use the general library, and the program received Federal financial assistance), plaintiff has failed to meet requirement 3 because he was not excluded from participation in a program. The SAN for an attendant to assist plaintiff "with meal access and other movement inside the institution," provided plaintiff with an accommodation for his alleged handicap which enabled him to climb stairs and participate in programming at the prison. Defendants are entitled to summary judgment with respect to plaintiff's official capacity claims brought under the Rehabilitation Act.

    **b.**    **ADA**

While plaintiff does not allege the specific section of the ADA that defendants allegedly violated, the gist of his amended complaint is a violation of Title II, i.e., that he was excluded from participation in library visits due to his disability. "To make out a prima facie case under Title II of the ADA [42 U.S.C. § 12132], a plaintiff must establish that '(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability.' " *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005).

Defendants take the position that plaintiff has failed to state a claim under the ADA, presenting the court with a two-step argument. First, defendants state that "[p]laintiff's claim appears to be one grounded in equal protection, because he argues that he was treated differently than other prisoners who can attend the library." Defendants Brief at p. 19. Second, defendants cite

*Board of Trustees of the University of Alabama v. Garrett*, 531 U.S. 356, 374 (2001) and *Popovich v. Cuyahoga County Court of Common Pleas*, 276 F.3d 808 (6th Cir. 2002) for the proposition that "[p]laintiff cannot bring claims sounding in equal protection under either Title I or Title II of the ADA." *Id.* However, defendants' legal argument does not address the issue of whether plaintiff stated a claim under the ADA. Rather, the two cases relied upon by defendants, *Garrett* and *Popovich*, address whether Eleventh Amendment immunity bars ADA claims. *See Popovich*, 276 F.3d at 812 (in a case involving Title I of the ADA, the court concluded that, "[i]t is clear after *Garrett* that congressional authority under section 5 to enforce the Equal Protection Clause is limited and will not sustain the Disabilities Act as an exception to Eleventh Amendment state immunity"). While defendants apparently rely on an Eleventh Amendment immunity defense, they have not explicitly raised that defense in their motions, nor have they addressed the three-part test for evaluating an Eleventh Amendment immunity to a suit under Title II of the ADA as formulated in *United States v. Georgia*, 546 U.S. 151 (2006).[5] This court need not make defendants' case for Eleventh Amendment immunity by scouring their various submissions to piece together appropriate arguments. *See Little v. Cox's Supermarkets*, 71 F.3d 637, 641 (7th Cir. 1995).

---

[5] *See Mingus v. Butler*, 591 F.3d 474, 482 (6th Cir. 2010) (whether an Eleventh Amendment immunity defense to a suit exists under Title II of the ADA is determined on a case-by-case basis utilizing the Supreme Court's three-part test announced in *Georgia*). The Sixth Circuit summarized the test as follows:

> To guide the lower courts in assessing an Eleventh Amendment defense to a suit under Title II, the Supreme Court [in *Georgia*] set forth a three-part test:
>
> [D]etermine . . . on a claim-by-claim basis, (1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid.

*Mingus*, 591 F.3d at 482 (quoting *Georgia*, 546 U.S. at 159).

15

Nevertheless, plaintiff's claim fails for the same reason his Rehabilitation Act claim did. Assuming that plaintiff has met the first two elements of an ADA claim (i.e., he was a disabled person, who was otherwise qualified for participation in the prison's program to use the general library), he was not excluded from the program or subjected to discrimination due to his disability because prison officials provided plaintiff with an attendant to assist him with movement inside the correctional facility. Accordingly, defendants' motion for summary judgment as to plaintiff's official capacity claim under the ADA should be granted.

### C. Injunctive relief

Plaintiff also seeks injunctive relief in the form of a transfer from RMI. The record reflects that plaintiff is currently housed at the Woodland Center Correctional Facility (MSP). *See* Change of Address (docket no. 70). Plaintiff received the requested relief when he was transferred out of RMI, and this renders his claims for injunctive relief moot. *See Henderson v. Martin*, 73 Fed. Appx. 115, 117 (6th Cir. 2003) (prisoner's claim for injunctive relief against prison officials became moot when prisoner was transferred from the prison of which he complained to a different facility); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) (prisoner's claims for declaratory and injunctive relief for prison staff's improper examination of his legal mail found moot because he was no longer confined at the facility that searched his mail). Defendants' motion for summary judgment should be granted with respect to this claim.[6]

---

[6] Having determined that defendants' are entitled to summary judgment on other grounds, it is unnecessary for the court to address defendants' claim of qualified immunity.

### D. Plaintiff's state law claim

Finally, plaintiff alleged that defendants were grossly negligent under state law.[7] The court should dismiss this claim for lack of jurisdiction. Section 1367 of Title 28 of the United States Code provides that "the district court shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form a part of the same case or controversy." 28 U.S.C. § 1367(a). Here, the court initially exercised its supplemental jurisdiction over plaintiff's state law claims, because those claims appeared intimately related to the alleged violations of § 1983, the ADA and the Rehabilitation Act. The dismissal of plaintiff's federal claims, however, requires the court to re-examine the issue of supplemental jurisdiction for state law claims. Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction over a claim if the court "has dismissed all claims over which it has original jurisdiction." Thus, once a court has dismissed a plaintiff's federal claim, the court must determine whether to exercise, or not to exercise, its supplemental jurisdiction under § 1367. *See Campanella v. Commerce Exchange Bank*, 137 F.3d 885, 892-893 (6th Cir. 1998).

As a general rule "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.*, 89 F.3d 1244, 1254-1255 (6th Cir. 1996). Here, there is no reason to retain supplemental jurisdiction over plaintiff's state law claim if the court rejects plaintiff's federal claims, and the court should dismiss the state law claim.

---

[7] Under Michigan law, "gross negligence" is defined as "conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results." M.C.L. § 691.1407(7)(a). While defendants' noted that gross negligence is not a basis for a § 1983 claim, *see Lewellen v. Metropolitan Government of Nashville and Davidson County, Tennessee*, 34 F.3d 345, 351 (6th Cir. 1994) ("[g]ross negligence is not actionable under § 1983, because it is not 'arbitrary in the constitutional sense'") (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 129 (1992)), they did not address the merits of this state law claim.

17

## IV. Recommendation

Accordingly, I respectfully recommend that defendants' motions for summary judgment (docket nos. 58 and 71) be **GRANTED** and that this case be dismissed.


Dated:  February 7, 2011                                  /s/ Hugh W. Brenneman, Jr.
                                                          HUGH W. BRENNEMAN, JR.
                                                          United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report.  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).